# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN HICKEY, | No. 4:18-CV-01793 |
| Plaintiff. | (Judge Brann) |
| v. | |
| THOMAS MCGINLEY, KAREN MERRITT-SCULLY, MICHAEL MOCLOCK, M.D. KEVIN MEITZLER, R.N., DENISE AUSTEEL, R.N., BRIAN DAVIS, PA-C, RENEE KERR, L.P.N., | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 17, 2018

Michael Moclock, M.D., moved to dismiss portions of Kathleen Hickey's complaint. For the following reasons, that motion will be granted.

## I. BACKGROUND

### A. Alleged Facts[1]

In 2008, Ms. Hickey's son Michael Serrano suffered a traumatic brain injury after being shot in the head.[2] Three years later, he was convicted of violating state

---

[1] When considering a motion to dismiss for failure to state a claim, a court assumes the truth of all factual allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this section, then, is taken entirely from Ms. Hickey's complaint and is presumed true for present purposes.

law and sentenced to a period of incarceration.³ He began serving his time in the State Correctional Institute ("SCI") at Graterford, where medical staff diagnosed him with chronic seizure disorder and prescribed him the antiepileptic drug Trileptal.⁴

Over the next few years, Mr. Serrano was moved to several different prisons within the Commonwealth. His medical records followed him to each new location, and he sought and received continuing medical care for his seizure disorder. In early 2013, medical staff at SCI-Houtzdale learned that Mr. Serrano was failing to take his medicine and was instead hoarding it; as a result, his Trileptal prescription was discontinued.⁵ In November 2015, Mr. Serrano was transferred for the last time, to SCI-Coal Township. Upon arrival, he was medically assessed by Dr. Moclock (the Medical Director of SCI-Coal Township), who determined that Mr. Serrano as "medically stable, [and] not suffering from chronic seizure disorder."⁶

---

²   Complaint (ECF No. 1) ¶¶ 30, 31.
³   *Id.* ¶ 33.
⁴   *Id.* ¶ 39.
⁵   *Id.* ¶ 64.
⁶   *Id.* ¶ 90.

Mr. Serrano suffered several medical events at SCI-Coal Township. On January 5, 2016, after being found unresponsive in his cell,[7] he was taken to the infirmary and treated for "blunt force trauma" under his right eye.[8] On March 31, 2016, he told the medical staff that he was feeling dizzy, but no care was provided at that time.[9] And on April 20, 2016, he suffered a seizure, for which he was treated by Renee Kerr, one of the prion's licensed practical nurses.[10] In her evaluation, Ms. Kerr failed to indicate Mr. Serrano's medical history as it related to his seizure disorder.[11] She also failed to contact any prison physician, to transport him to the infirmary, or to record his current seizure in his medical chart. The next day, Dr. Moclock "validated" Ms. Kerr's evaluation of Mr. Serrano after performing a "quality of care" review of her work.[12]

On May 29, 2016, Mr. Serrano was again found unresponsive in his cell at SCI-Coal Township and was pronounced dead.[13] A pathologist later determined that he died due to complications resulting from the 2008 shooting.[14]

---

[7] *Id.* ¶ 94.
[8] *Id.* ¶¶ 95-97.
[9] *Id.* ¶ 100.
[10] *Id.* ¶¶ 105-06.
[11] *Id.* ¶ 112.
[12] *Id.* ¶¶ 119-20.
[13] *Id.* ¶ 128.
[14] *Id.* ¶ 130.

B.  **Procedural History**

Ms. Hickey initiated this suit in the Northumberland County Court of Common Pleas against Ms. Kerr, Dr. Moclock, and several other prison-related individuals. Defendants subsequently removed the case to this Court.

Ms. Hickey's complaint contains, *inter alia*, claims against Dr. Moclock for medical malpractice and for civil rights violations, and lists a number of actions that Ms. Hickey believes Dr. Moclock and the other defendants could have taken that may have saved Mr. Serrano's life.[15] These proposed actions fall into three broad categories. The first category comprises specific actions vis-à-vis Mr. Serrano and his medical needs[16]—for example, that defendants should have run "a compliment of diagnostic studies" on Mr. Serrano to determine the cause of his January 2016 fall at SCI-Coal Township.[17] The second category consists of allegations that defendants could have provided more effective supervision and training to the prison's medical staff.[18] And the third category are allegations that defendants should have implemented a number of specific prison-wide practices relating to the provision of medical care to inmates[19]—for example, that defendants should have "[i]mplemented a policy . . . pursuant to which license[d] practical

---

[15] Complaint ¶ 132.

[16] *Id.* ¶ 132(a)-(e), (h).

[17] *Id.* ¶ 132(a)

[18] *Id.* ¶ 132(f), (g).

[19] *Id.* ¶ 132 (i)-(n).

nurses were trained to recognize the high risk of death associated with seizure disorder . . . ."[20]

## II. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[21] a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party;[22] the court does not, however, assume the truth of any of the complaint's legal conclusions.[23] If a complaint's factual allegations, so treated, state a claim that is plausible—*i.e.*, if they allow the court to infer the defendant's liability—the motion is denied; if they fail to do so, the motion is granted.[24]

### B. Whether Ms. Hickey's Claim for Punitive Damages Against Dr. Moclock Should Be Dismissed

Dr. Moclock argues that Ms. Hickey's claim for punitive damages against him should be dismissed. This Court agrees.

Under Pennsylvania law, "punitive damages are . . . proper only in case where the defendant's actions are so outrageous as to demonstrate willful,

---

[20] *Id.* ¶ 132(i).

[21] Federal Rule of Civil Procedure 12(b)(6).

[22] *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[24] *Id.*

wanton[,] or reckless conduct."[25]  Here, Ms. Hickey is attempting to recover for recklessly indifferent, not deliberate, conduct.  Therefore, she must allege, *inter alia*, that Dr. Moclock "had a subjective appreciation of the risk of harm to which [Mr. Serrano] was exposed"[26]—*i.e.*, that Dr. Moclock knew that Mr. Serrano allegedly required special care because of his previous gunshot would and chronic seizure disorder.

Ms. Hickey, however, has failed to do so.  As noted above, the complaint alleges that Dr. Moclock personally examined Mr. Serrano only once, during an assessment completed upon Mr. Serrano's arrival at SCI-Coal Township, and that Dr. Serrano's opinion at that time was that Mr. Serrano was "medically stable."  The complaint's only other allegation of interaction between Dr. Moclock and Mr. Serrano pertains to Dr. Moclock's review of Ms. Kerr's April 2016 post-seizure evaluation of Mr. Serrano, which evaluation failed to indicate that Mr. Serrano had a history of chronic seizure disorder.  From these allegations, this Court cannot infer that Dr. Moclock actually knew of, and appreciated, any special risk of harm posed to Mr. Serrano by his preexisting medical conditions.

Therefore, this Court will dismiss Ms. Hickey's claim for punitive damages against Dr. Moclock.  That dismissal, however, will be without prejudice, and Ms.

---

[25] *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121 (2005).

[26] *Id.* at 124.

Hickey will be granted leave to amend her complaint to correct the above-identified deficiency.

### C. Whether Ms. Hickey's Eighth Amendment Claim Against Dr. Moclock Should Be Dismissed

Dr. Moclock argues that Ms. Hickey's Eighth Amendment claim against him should be dismissed. This Court agrees.

Ms. Hickey's civil rights claim against Dr. Moclock proceeds under both direct and supervisory theories of liability. Under both theories, she is attempting to recover for deliberately indifferent conduct. Therefore, to sustain her direct liability theory, Ms. Hickey must allege that Dr. Moclock was actually aware of Mr. Serrano's alleged special medical needs.[27] For the reasons stated in the previous section, Ms. Hickey has failed to do so. And to recover under a supervisory liability theory, Ms. Hickey must allege that Dr. Moclock was actually aware of the need for better supervision of the prison's medical staff or the need for different policies at the prison,[28] either because of a pattern of similar incidents or because the need for that supervision or those policies was obvious.[29] Ms. Hickey, however, has failed to allege that there have been previous, similar

---

[27] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

[28] *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3rd Cir. 1999).

[29] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407-09 (1997).

incidents at SCI-Coal Township, and this Court cannot conclude that the need for any of the specific supervision or policies suggested by Ms. Hickey was obvious.[30]

Therefore, this Court will dismiss Ms. Hickey's Eighth Amendment claim against Dr. Moclock. That dismissal, however, will be without prejudice, and Ms. Hickey will be granted leave to amend her complaint to correct the above-identified deficiency.

## III. CONCLUSION

For the reasons discussed above, Dr. Moclock's motion to dismiss portions of Ms. Hickey's complaint will be granted. An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[30] *See id.* at 409 ("in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [subordinates] with specific tools to handle recurring situations").